UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

IN RE:

CRAIG ALAN TIMMERMAN,

    Debtor

Chapter 7

Bankruptcy No. 17-00804

## OPINION AND ORDER ON DEBTOR'S MOTION TO AVOID LIEN

The matter before the Court is Debtor's Motion to Avoid Lien with Brian Stickney (Doc. 95) on real property located at 3301 Minnesota Ave, Mapleton, Iowa ("Mapleton Property"). The Court held a virtual hearing by video conference on February 23, 2024. Wilford Forker appeared for Craig Timmerman ("Debtor"). Jessica Board appeared for Creditor Brian Stickney ("Stickney"). The Court heard testimony from both Timmerman and Stickney. The Court then heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K).

### I. STATEMENT OF THE CASE

Debtor filed his Chapter 7 bankruptcy case on June 29, 2017, claiming the Mapleton Property as exempted homestead under Iowa Code §§ 561.2 and 561.16. Stickney, who sold the Mapleton Property to Debtor, was not listed as a creditor. The case was closed on March 13, 2018, reopened on July 25, 2018, and closed

again on July 31, 2019. On February 24, 2023, Stickney filed a Vendor's Lien in Woodbury County, Iowa on the Mapleton Property claiming he was owed $108,229.00. Debtor again had the case reopened, filed an amendment to Schedule E/F listing Stickney as a creditor, and stated that the amount of disputed debt was $108,229.00. Debtor then filed a Motion to Avoid Lien, arguing that Stickney's Vendor's Lien should be avoided because it impaired his homestead exemption. Stickney objected to the Motion to Avoid Lien, arguing the Debtor could not claim the homestead exemption because he is no longer living at the property. For the following reasons, the Court overrules Stickney's objection, finds that no valid vendor's lien exists, and therefore denies Debtor's Motion to Avoid Lien as moot since there is no lien to be avoided.

## II. FINDINGS OF FACT

Many facts are undisputed. Debtor was previously married to Stickney's daughter, Sarah. In 2013, Stickney wanted to purchase land from a third party as part of a foreclosure sale consisting of two parcels—a northern parcel of about 32 acres and a southern parcel of about 21 acres. He did not have the financial ability to do so on his own. Thus, he asked for, and received, financial help from Sarah, Debtor, and Stickney's parents and was able to buy the approximately 53 acres for $222,270.33. As part of that purchase arrangement, Stickney agreed to sell to Debtor and Sarah some of the land—the southern parcel that they refer to as the

2

Mapleton Property. The Mapleton Property is approximately 21.80 acres and legally described as follows:

> All that part of the Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section Thirty (30), and all that part of the Northeast Quarter (NE 1/4) of the Northeast Quarter (NE 1/4) of Section Thirty One (31), all in Township Eighty Six (86) North, Range Forty Three (43) West of the Fifth (5th) Principal Meridian, Woodbury County, Iowa, described as beginning at the Northeast (NE) corner of Section Thirty-one (31), Township Eighty-six (86), Range Forty-three (43), thence South Zero Degrees Twenty-six Minutes Fifteen Seconds (S 00°26'15") West along the East line of the Northeast Quarter (NE 1/4) of Section Thirty-one (31), Township Eighty-six (86), Range Forty-three (43), One Thousand Two Hundred Thirty-two and Ninety-five Hundredths feet (1232.95') to the centerline of Parnell Creek, thence following the centerline of Parnell Creek, North Eighty-one Degrees Fifty-five Minutes Zero Seconds (N 81°55'00") West Two Hundred Fifty and Thirty Hundredths feet (250.30'), thence North Twenty-three Degrees Fifty-five Minutes Zero Seconds (N 23°55'00") West Three Hundred Three feet (303.00'), thence North Sixty-six Degrees Fifty-one Minutes Zero Seconds (N 66°51'00") West Three Hundred Thirty-two feet (W 332.00'), thence North Eighty-six Degrees Fifteen Minutes Zero Seconds (N 86°15'00") West Four Hundred Eight feet (408.00'), thence leaving the centerline of Parnell Creek, North Eighteen Degrees Five Minutes Zero Seconds (N 18°05'00") East Six Hundred Ninety-five feet (E 695.00'), thence South Eighty-seven Degrees Twenty-five Minutes Zero Seconds (S 87°25'00") East Five Hundred Fifteen feet (E 515.00'), thence North Forty Degrees Forty-five Minutes Zero Seconds (N 40°45'00") East Two Hundred Thirty-one and Fifty Hundredths feet (E 231.50'), thence North Two Degrees Zero Minutes Zero Seconds (N 02°00'00") West One Hundred Thirty-nine feet (W 139.00'), thence North Eighteen Degrees Zero Minutes Zero Seconds (N 18°00'00") East Six Hundred Ninety-nine feet (E 699.00') to the East line of the Southeast Quarter (SE 1/4) of Section Thirty (30), Township Eighty-six (86), Range Forty-three (43), thence due South along said East line Eight Hundred Fifty-three feet (853.00') to the Point of Beginning.
>
> Tract contains 2.60 acres, including Public Road, and 2.17 acres, excluding Public Road in the SE 1/4 SE 1/4 of Section 30-86-43, and 19.63 acres in the NE 1/4 NE 1/4 of Section 31-86-43.
>
> Note: The East line of the SE 1/4 of Section 30-86-43 is assumed to bear due South.

Cr. Ex. 3. Sarah and Debtor could not qualify for traditional financing for the purchase of the Mapleton Property. As a result, Stickney sold the parcel of land to Sarah and Debtor on contract in 2013. Sarah and Debtor also needed additional funds to start their farming operation. Therefore, Stickney conveyed the land to Debtor and Sarah by Quit Claim Deed in 2014 so they could use the land as collateral for the farming loan, instead of providing the deed once the balance was

3

paid in full. There was disagreement on the particulars of the arrangement. Debtor claimed he put $65,000 into the deal when Stickney purchased the 53 acres out of the foreclosure sale. Debtor claimed he needed $35,000 of that money back to be able to farm in 2013–14. Stickney's parents, Sarah's grandparents, loaned him the $35,000 and he paid them back within the next year. Debtor said that because he loaned $65,000 to Stickney—and paid the grandparents the $35,000—he was supposed to have a discount of $65,000 on the land Stickney was selling to him and Sarah.

Stickney claimed that Debtor only put in $30,000 (apparently believing the $35,000 Debtor borrowed back from his parents would not get any credit). Stickney agreed that his parents helped him with the foreclosure sale purchase but offered no details about his deal with his parents or how that deal related to the deal with Debtor and Sarah. The Court finds Stickney not to be credible on this point. He appeared to believe Debtor did not repay his parents the $35,000 and took it out of the calculation. His lack of detail on his deal with his parents (now deceased) and the credibility of Debtor on this point, are the bases for that conclusion.

Debtor further claimed that Stickney told him if Debtor paid Stickney "at least half" of the 53-acre purchase price—$110,000.00—he would deed Sarah and Debtor the property. On top of the $65,000 that Debtor paid towards the total

purchase price in 2013, he also gave Stickney a check for $20,000 in July 2016 (Cr. Ex. 5), transferred beans from his farm to Stickney that was worth approximately $14,000, transferred title of a semi-trailer to Stickney—worth $12,500 according to Debtor but between $8,000-$9,600 according to Stickney (Cr. Ex. 6), wrote a check to Stickney for another $5,000 around the same time as the trailer title transfer (Doc. 114, at 3), paid $7,371.52 in corn sale proceeds in August 2022 (Cr. Ex. 7), and finally paid $400 in cash from Sarah's bank account. In total, Debtor paid Stickney $124,271.52.

Debtor filed his voluntary bankruptcy petition in June 2017. Stickney was not included as a creditor in Debtor's bankruptcy schedules. In February 2022, Debtor filed a petition for dissolution of marriage against Sarah and moved out of the Mapleton Property. A divorce decree was entered on February 28, 2022. On February 24, 2023, Stickney filed a Vendor's Lien in Woodbury County, Iowa on the Mapleton Property claiming he was owed $108,229.00. Debtor again had the bankruptcy case reopened, filed an amendment to Schedule E/F listing Stickney as a creditor, and stated that the amount of disputed debt was $108,229.00. Debtor then filed a Motion to Avoid Lien, arguing that Stickney's Vendor's Lien should be avoided because it impairs his homestead exemption. Stickney objected to the Motion to Avoid Lien, arguing the Debtor could not claim the homestead exemption because he is no longer living at the property.

5

### III. Conclusions of Law/Discussion

The questions presented to the Court are whether Debtor abandoned his homestead by moving out of the Mapleton Property, thereby making the property no longer exempt; whether Stickney has a valid Vendor's Lien under Iowa law; if so, whether it arose at the time of the transaction or when filed in 2023; and, whether the Quit Claim Deed extinguished that Vendor's Lien. The Court will address each in turn.

**A. Debtor did not abandon his homestead and his homestead exemption is properly claimed.**

The issue before the Court is whether Debtor can avoid the lien—on the basis that it impairs his homestead. Debtor claims he had the necessary homestead rights at the time of his bankruptcy. In opposition, Stickney argues that Debtor cannot claim homestead because Debtor abandoned the Mapleton Property when he moved out, thereby making Stickney's lien not avoidable under 11 U.S.C. § 522(f)(1). Specifically, Stickney claims the lien does not impair an exemption to which Debtor would have been entitled. The Court disagrees.

"Iowa has chosen to opt out of federal exemptions [pursuant to Iowa Code § 627.10] . . . [and] [f]or this reason, Iowa homestead exemption laws govern this issue." In re Culver, 2023 WL 7117080, at *2 (Bankr. N.D. Iowa Oct. 27, 2023). Iowa law provides that "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code §

6

561.16 (2023). "The homestead must embrace the house as used as a home by the owner." Iowa Code § 561.1 (2023). It is well-settled that Iowa caselaw requires actual occupancy to continue the exempt homestead status. See In re Estate of McClain, 262 N.W. 666, 670 (Iowa 1935) ("So strong is [the presumption in favor of homestead continuance] that the majority of courts hold that where the homestead character has attached to property it can be lost only by waiver or abandonment by the owner."). Debtors in bankruptcy are authorized to exempt homestead property from the bankruptcy estate that is exempt under Iowa law *on the date of filing*. Iowa Code § 627.10 (2023) (emphasis added).

Under Iowa Code § 627.10, Debtor's homestead is determined on the date of Debtor's bankruptcy petition. Debtor filed for bankruptcy on June 6, 2017. Stickney has not argued that Debtor had abandoned the Mapleton Property at the time of Debtor's bankruptcy filing, nor has Stickney argued that the homestead character failed to attach to the Mapleton Property. Stickney argues Debtor has abandoned the property after Debtor's bankruptcy filing. Thus, he bears the burden to prove the homestead exemption was not properly claimed. Fed. R. Bankr. P. 4003(c) ([T]he objecting party has the burden of proving that the exemptions are not properly claimed.").

This Court has previously addressed abandonment of homestead property in a factually similar case. See, e.g., In re Powers, 286 B.R. 726 (Bankr. N.D. Iowa

7

2002). In In re Powers, debtors purchased and continuously occupied their home until their separation in June 1998, after which debtor-husband moved into an apartment while debtor-wife remained in the home. Id. at 727. They jointly filed for Chapter 7 bankruptcy in December 1998 and were granted a discharge in March 1999. Id. The Motion to Avoid Lien in that case was filed in 2002 when debtors were attempting to clear title to sell the homestead. Id. The Court analyzed homestead abandonment and found that the debtor-husband did not abandon the homestead when, following the separation from debtor-wife, he took up residence in an apartment. Id. at 727–28. The Court also placed weight in the fact that the creditors had not objected previously to the debtors' claimed homestead exemption and let years pass before raising said objection. Id.

   The Court finds this case controls and Debtor did not abandon his homestead as a matter of law. Iowa Code and caselaw contemplate the sale of homestead property and therefore the Court cannot find abandonment based on the facts presented at this time in this case. See, e.g., Iowa Code § 561.20 (2023) ("Where . . . a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."); In re Allen, 301 B.R. 55 (Bankr. S.D. Iowa 2003) (discussing the intricacies and application of Iowa Code § 561.20). Although there is nothing in the record to indicate Debtor's intent to

8

reinvest the proceeds from the homestead sale, Stickney bears the burden of proof here and has offered no evidence to indicate otherwise. Further, "the loss of a homestead exemption through the theory of abandonment is not favored" under Iowa law. In re Estate of Timm, 2013 WL 3272488, at *3 (Iowa Ct. App. 2013); see also In re Matter of Bly, 456 N.W.2d 195, 199 (Iowa 1990) ("Regard should be had to the spirit of the [homestead] law rather than its strict letter.").

Considering all the above, the Court finds that Debtor's claimed homestead exemption of the Mapleton Property was valid at the time of his bankruptcy filing and has not been abandoned.

### B. To the extent that Stickney had a valid Vendor's Lien, it was extinguished by the Quit Claim Deed.

If the alleged lien at issue was not a vendor's lien, the Court's finding that Debtor properly claimed his homestead exemption would be dispositive since the lien does not attach to the exempted homestead property. Stickney argues, however, that a vendor's lien attaches to whatever right the vendee has in the property, not the property itself. Pray & Thoms v. Donald, 193 N.W. 7, 12 (Iowa 1923) ("A vendor's lien . . . is not an interest or estate in the land sold but is a mere equity to be enforced by the court in aid of the vendor's action to recover the agreed selling price."). Since the vendor's lien is allowed to reach the proceeds of any sale, the Court finds that it still impairs the exemption to which Debtor is entitled. See In re Miell, 2010 WL 1258196, at *4 (Bankr. N.D. Iowa Mar. 29,

9

2010), aff'd sub nom. In re Meill, 441 B.R. 610 (B.A.P. 8th Cir. 2010) (holding that a *valid and properly recorded* vendor's lien would attach to the proceeds of the sale of the real estate at issue). Given this impairment, the vendor's lien, if valid, is avoidable under 11 U.S.C. § 522(f)(1) ("[D]ebtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . .").

Debtor argues that even if a valid equitable vendor's lien arose and even if it was not avoidable, it was extinguished by the Quit Claim Deed. Stickney argues the lien morphed into an express vendor's lien as contemplated by Iowa Code § 557.18 through the various contracts the parties have offered into evidence. Section 557.18 states in relevant part:

> No vendor's lien for unpaid purchase money shall be enforced in any court of this state after a conveyance by the vendee, *unless such lien is reserved by conveyance, mortgage, or other instrument duly acknowledged and recorded*.

Iowa Code § 557.18 (2023) (emphasis added).

The Court turns first to Creditor's Exhibit 2 titled "Contract for the Sale and Purchase of Real Estate." Stickney testified at hearing that this exhibit was a form he printed off the internet "to keep track of payments." Stickney admitted Debtor likely did not see the handwritten payment entries he made in the margin on this form since he made them after Debtor had initialed and signed the document. The Court questions the credibility of this exhibit based on the testimony at hearing and

10

the numerous corrections, notations, and alterations made by Stickney. Numbers are scratched out and relisted with only Stickney's initials by the corrections. The Court is unable to ascertain what the figures were before the later corrections by Stickney. Even the date of signing is questionable because the month was scratched out and changed. The exhibits and testimony at hearing certainly show Debtor and Stickney had some arrangement on the financing and sale of the property, but the documents raise more questions than they answer on the actual terms involved and the parties' intent on their deal.

Even Creditor's Exhibit 3 titled "Offer to Buy Real Estate and Acceptance"—drafted by an attorney and accompanied by Creditor's Exhibit 4, the Promissory Note—leave the key questions before the Court without any clarity. Debtor, Stickney, and Sarah all signed Creditor's Exhibit 3 on July 14, 2014. Included in that contract are the following provisions:

> 10. DEED. *Upon payment of the Purchase Price, SELLERS shall convey the Property to BUYERS by quit claim deed, free and clear of all liens*, restrictions, and encumbrances except as provided in this Agreement.
> . . .
> 13. STATEMENT AS TO LIENS. If Buyers intent to assume or take subject to a lien on the Property, *SELLERS shall furnish BUYERS with a written statement prior to close from the holder of such lien*, showing the correct balance due.
> . . .
> 17. GENERAL PROVISIONS. . . . This Agreement contains the entire agreement of the parties and shall not be amended except by a written instrument duly signed by SELLERS and BUYERS.

11

Cr. Ex. 3 (emphasis added).  There is no reservation of a vendor's lien, and, in fact, the question of liens is addressed.  Stickney's own documents show that there were procedures the parties agreed to on liens—and none were asserted under these procedures.  The Court concludes that an equitable vendor's lien—not an express vendor's lien—arose at the time of signing.

Finally, the Court cannot ignore the issue of Debtor's Exhibit I—the Quit Claim Deed—which is also resolved by contract language.  The Quit Claim Deed was signed on the same day as the Offer to Buy Real Estate and Acceptance and recorded in Woodbury County, Iowa on July 22, 2014.  The Offer to Buy Real Estate and Acceptance and recorded Quit Claim Deed meant, under the terms of their contract, that payment of the purchase price was made.  The Mapleton Property became Debtor's property "free and clear of liens, restrictions, and encumbrances."  The Mapleton Property is deeded to Debtor and Sarah "free and clear of liens" by the Quit Claim Deed and that deed was subsequently recorded.  The Quit Claim Deed therefore extinguishes any claim by Stickney of an equitable vendor's lien.  See, e.g., Prouty v. Clark, 34 N.W. 614 (Iowa 1887) ("The policy of [Iowa Code § 557.18] is that a vendor's lien existing in parol ceases to have any validity after a conveyance."); Johnson v. Light, 723 N.W.2d 125, 126–28 (S.D. 2006) ("[Vendor's] acceptance of the quitclaim deed not only terminated the contract for deed but also extinguished his vendor's lien."); Security State Bank of

Hannaford v. Harrington, 452 N.W.2d 72 (N.D.1990) (holding that a vendor's lien is created when a vendor sells real property under a contract for deed *and retains legal title as security* in contrast to the present case).

### C. Debtor's failure to list Stickney as a creditor in his original Chapter 7 petition does not except the debt from discharge since Stickney had actual knowledge of the bankruptcy proceedings.

Stickney finally argues that since he was not listed in Debtor's original Chapter 7 petition as a creditor, the debt is excepted from discharge. While not cited directly by either party, the parties' arguments in briefing and at hearing implicated § 523(a)(3)(A), which states in relevant part:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt--
> . . .
> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
>    (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, *unless such creditor had notice or actual knowledge of the case in time for such timely filing* . . . .

11 U.S.C. § 523(a)(3) (emphasis added). The Court finds that the fact that Stickney was not listed as a creditor on Debtor's original bankruptcy petition is immaterial to this Court's overall determination in this case. Although the parties disagree as to the manner of communication, both parties testified that Stickney had actual knowledge of the bankruptcy proceedings in 2017. Even if Stickney did not possess actual knowledge, courts have held that in no-asset Chapter 7

13

bankruptcies such as this, failure to list a creditor does not prejudice that creditor because, in such a bankruptcy, there are no assets to be distributed. See Nash v. Hall, 2006 WL 3200972, at *1 (E.D. Ark. Nov. 3, 2006). Other circuits follow this reasoning as well. See In re Nielsen, 383 F.3d 922 (9th Cir. 2004); In re Madaj, 149 F.3d 467 (6th Cir. 1998); Judd v. Wolfe, 78 F.3d 110 (3rd Cir. 1996).

### IV.   CONCLUSION/ORDER

The Court concludes that Debtor properly claimed the homestead exemption, that Stickney did have an equitable vendor's lien, and that upon recording of the Quit Claim Deed, the equitable vendor's lien was extinguished under Iowa law. Therefore, the Motion to Avoid Lien is unnecessary since there is no lien to avoid and the homestead property is not subject to Stickney's now-extinguished equitable vendor's lien. See In re Powers, 286 B.R. 726 (Bankr. N.D. Iowa 2002); In re Karrer, 183 B.R. 177 (Bankr. N.D. Iowa 1994).

WHEREFORE, Debtor's Motion to Avoid Lien of Brian Stickney is DENIED as moot.

Ordered:

February 29, 2024

Thad J. Collins
Chief Bankruptcy Judge